THOMPSON and WIFE *v.* THE EXECUTORS OF CARMICHAEL
and others.

The provision in the statute regulating descents, for bringing advancements made
    by an intestate, into *hotch-pot*, in the division of his real estate, does not apply
    where there is a will disposing of a part of the decedent's property, either real or
    personal. It relates to a total intestacy only.
Where a will, disposing of all the decedent's real and personal property, was decreed
    to be invalid, except as to some specific legacies, and a charge for the support of
    his widow ; it was *held*, on a partition of the real estate, that an heir who had
    received an advancement from the decedent, was not bound to bring the same
    into *hotch-pot*, or account for it in the division of the estate.
The same doctrine has always prevailed in England, under the statute 22 and 23
    Charles 2, ch. 10, from which our law was taken.
A testator directed that his wife should receive half-yearly, such sum out of his
    estate as the trustees and executors of his will, from time to time, should think
    proper and necessary for her reasonable support :
*Held*, that her *reasonable support was not to be determined by the amount* neces-
    sary for her bare subsistence ; but regard must also be had to the extent and
    income of the estate, and the propriety of her living with her children.
        Sept. 12 ; December 3, 1845.

ON the first hearing of this cause, the trusts of the will of the
testator, Daniel Carmichael, by which all his lands were vested
in his executors, were decreed to be void ; and the bequests of
his personal property were also held to be invalid, with the ex-
ception of some small specific legacies, and a provision for the
support of his wife. The bill being framed for a partition of the
real estate, the usual interlocutory decree was made, referring it
to a master to take proofs and make the proper inquiries, prelim-
inary to a decree for partition.—(See the cause reported in 1
Sand. Ch. R. 387.)

The will contained a provision that in case the wife of the
testator should release her right of dower to the trustees, or in
case she should not be entitled to dower, then that she should at
least half-yearly as long as she should remain a widow, receive
such sums of money from out of the real or personal estate as
the case might require, as the trustees and executors of the will,
from time to time should think proper and necessary for her
reasonable support.

The widow was not entitled to any dower by reason of her alienage. Under this clause in the will, the Master reported that $350 annually ought to be paid to the widow for her reasonable support. This sum was from $100 to $150 more, than according to the testimony, was necessary for her support, if she were to live at board; but it appeared that some of her children were of tender years so as to require her care, and the income of the estate was about $1450 per annum, which was only a small per centage on the value of the property.

The Master on the reference refused to charge the complainants with a bond of $1000, alleged to have been given to Mrs. Thompson by the testator, as a portion or advancement. The defendants insisted that she was bound to bring this bond into *hotch-pot*, and they excepted to the Master's report in respect of the bonds, and the amount of the annual allowance to the widow.

*Charles O'Conor*, for the complainants.

I. The statute being in terms confined to cases of intestacy, and the law of advancements being a mere creation of positive statute, the alleged advancement cannot be charged against the complainant in this case, because not only is there a will naming an executor; but such will makes several valid dispositions of property, and among them a provision for the widow which conveys the present use of the whole personal estate.—(*Snelgrove* v. *Snelgrove*, 4 Dessaussure, 292; *Newman* v. *Wilbourne*, 1 Hill So. Ca. Ch. R. 11; *Sinkler's Ex'r* v. *Sinkler's Legatees*, 2 Dess. 139; 3 Bac. Abr. 76, 77; *Walton* v. *Walton*, 14 Vesey, 323; and see note to *Ex parte Lawton*, 3 Dess. 202.)

II. An ingenious argument has been constructed upon a change of language in the revised statutes, in reply to which we respectfully make the following suggestions, referring also to *Harris* v. *Fly*, 7 Paige, 425; *Rhodes* v. *Rudge*, 1 Simons, 79; Ram on Assets, 204; end of 10th provision in decree, in *Kane* v. *Gott*, 24 Wend. 647.

It would seem from the revisers' note, that they intended to abolish the rule allowing a mere will, without any disposition of property, to prevent the application of the doctrince of advancement.

Thompson v. Carmichael.

It is evident that the legislature did not apprehend the object of the revisers, and did not adopt it. Proceeding to give a construction to the statute, the question will be whether the revisers' equivocal phrase, " deceased persons," or the definite word " intestate," used by the legislature, shall control.

1. We are to construe the statutes most nearly to the common law; and subsequent statutes most nearly to the prior law. For an intent to change the pre-existing law, is not to be inferred from a mere change of phraseology, in a revision of prior statutes. (2 Caines' Cases in Error, 150 ; 20 John. R. 722.)

2. Now here, though it be apparent that the revisers intended to change the law, and attempted to make that intent apparent to the legislature; yet the legislature, which is the *law-making power*, either did not perceive or intentionally disregarded that design; for the legislature inserted in their addition, the very word " intestate," which was deemed so objectionable by the revisers.

3. In construing the provisions relative to personal estates, one of two things must take place. " Intestate," must be ‘ deflected from its proper meaning, and rendered synonymous with " de-ceased person," or the latter must take its complexion from " intestate." The first course would bend the will of the legislature to the will of the revisers. This would seem to be the reverse of the proper course. And independently of the argument to be derived from the paramount authority of the legislature, the indefinite should yield to the definite. " Deceased person," is open, equivocal and indeterminate ; it points to no definite class or kind of decedents. It yields no light as to the intent—whether it was intended to include or exclude any particular class of decedents. " Intestate" is precise and definite, and consequently serves to define the class of decedents intended by the preceding indefinite terms, " deceased persons."

4. Even if the court would allow itself to be controlled by the intent of the revisers, still it does not appear that that intent extended to alter the English rule, in a case where a portion of the estate was disposed of, but only to a mere naked testacy, i. e. a will, and nothing more. In the present case there is a legacy to the widow, with the present use of the whole personal estate ; be-

sides sundry other legacies. To allow of an advancement being charged against the next of kin coming in under a partial intestacy, would be unequal, inequitable, and contrary to the spirit and intent of the statute of advancements. Suppose a man worth $30,000 and having two sons, gives in his life-time $10,000 to one of them, and by his will $10,000 to another. There would then be an intestacy as to $10,000, the *whole* of which must go to the legatee. This gives him two-thirds of the estate.

5. Again, this part of the R. S. where these dubious words, " deceased persons" occur, are by 2 R. S. 98, sec. 79, rendered wholly inapplicable to this case. And consequently this case is wholly governed by 1 R. S. 754, sec. 23 ; and in this provision, the "intestate," is the word used throughout, and the decisions cited apply with all their force.

6. It is conceived, however, that the true construction of the provisions, to avoid all conflict and inconsistencies, and make the whole rational ; is as above suggested in subd. 2, to wit., that the revisers' intent was disregarded and rejected by the legislature. This doctrine of advancement is a creature of statute, and however equitable in itself, has no foothold in the law, except what it derives from direct enactment. *Ita lex scripta est*, is the only reason that need or can be, for charging an advancement. Where the written statute does not reach, the previous law remains.

III. The *personal* estate must be first applied to the satisfaction of the widow's provision, and exhausted, before a resort can be had for that purpose to the real estate.

: *D. M. Cowdrey*, and *R. Emmet*, for the defendants.

The statute of distribution among next of kin, expressly provides for bringing advancements into hotchpot, in cases where there is a will which does not bequeath the whole estate ; as well as where the deceased shall have died intestate. (2 R. S. 97, § 75, 76.)

The revisers in their notes to § 75, (3 R. S. 2d Ed. p. 645,) say that they have substituted the term " deceased," for "intestate" in the old act, (1 R. L. of 1813, p. 317, § 16,) in order to provide

for the case where there is a will which does not bequeath the estate ; and that they have omitted (in that section) the part respecting advancement, as being more proper for a separate section, (which immediately follows.) In case a person made no disposition of such of his goods as were testable; whether that were only part, or the whole of them, he was, and is said to die intestate. (2 Black. Com. 494.)

The decree in this case has created the very state of things contemplated by § 75, viz., a will, but the surplus after the payment of debts and legacies, not bequeathed.

But it is provided by the 78 section that § 76, and 77 (providing for bringing advancements into hotchpot) shall not apply in any case, where there shall be any real estate of the intestate to descend to his heirs.

*Note*, this provision was not in the section as originally proposed by the revisers. It was an amendment by the legislature. The reason given by the revisers in their note to § 75, for using the word " deceased," instead of " intestate," either seems to have been disregarded by the legislature in this amendment, or they meant to confine the prohibition as to the application of § 76 and 77, to cases of strict or entire intestacy.

If they intended to embrace every case which could arise under § 75, then inasmuch as Carmichael left real estate to descend to his heirs, § 76 and 77, (stat. distributions,) cannot apply to this case ; and we must look to the provisions about advancements, in that part of the statute which regulates the descent of real property.

1 R. S. 754, § 23, 24, 25, 26, (relating to advancements,) were all amendments to the chapter as proposed by the revisers. (See Revisers Notes, 3 R. S. 2d Ed. 605.)

Section 23d provides, " If any child of an intestate shall have been advanced by him" &c. ; differing from § 76, of the statute of distributions, which says, " If any child of such deceased person, shall have been advanced by the deceased," &c.

It is contended for the complainants ; 1st. That the provisions about advancements in the statute of distribution, (§ 76 and 77,) have no application to this case, because Carmichael left real estate to descend to his heirs. (§ 78.)

2d. That the provisions about advancements in the statute of descents, (§ 23, 24, 25,) do not apply, because this is not a case of intestacy, there being a will and executors.

This is blowing hot and cold both, because to prevent the application of the provisions about advancements in the statute of distributions, Carmichael must be assumed to have died intestate (§ 78;) and to prevent the application of those provisions in the statute of descents, he must be considered as not having died intestate.

But assuming the point to be whether the provisions in relation to advancements in the statute of descents apply, we contend that Carmichael is to be considered an intestate, within the operation of that statute.

1st. In a case of partial intestacy, must advancements be brought into hotchpot ?

2d. Was this a case of partial intestacy, or of actual or total or entire intestacy, *pro tanto*, of the estate ?

In *Walton* v. *Walton*, (14 Vesey, 323,) Sir William Grant, Master of the Rolls says, " the provision in the statute of distributions, applies only to the case of actual intestacy, and where there is an executor and consequently a complete will, though the executor may be declared a trustee for the next of kin, they take as if the residue had been actually given to them; therefore the child advanced by her father in his life, could not be called on to bring her share into hotchpot." The statute of distributions means, not a person making no will, but a person dying intestate as to the subject to be distributed by the statute. (*Twisden* v. *Twisden*, E. 1804, 9 Vesey, 425.)

The principle assumed in this opinion of Sir W. Grant, and upon which it turns, is that the appointment of an executor, constitutes a complete will. This may be true as respects personal property, because the executor becomes entitled to all personal property, either in trust for others, or beneficially for himself.

But it has no application to a will of real estate. Suppose a man makes a will simply appointing an executor, but making no disposition of his property, and dies leaving nothing but real estate, and no debts to pay, is that a complete will? The executor takes nothing, has no function to perform.

4 Kent's Com. p. 419, note a. remarks upon the word " deceased" in the statute of distribution, and " intestate" in the statute of descents and doubts the application of *Walton* v. *Walton*, in this state. And see the remarks of Chancellor Walworth in *Hawley* v. *James*, (5 Paige's, Ch. Rep. 450, 451,) on the word " deceased" in the statute of distribution, and " intestate" in the stat. of descents. He refers to *Vance* v. *Huling*, (2 Yerger's Rep. 135, Tennessee, 1833. See reversal 16 Wend. page 61.)

This case in Yerger was a case of descent of real estate acquired subsequent to a will, there being an after born child. Decree of hotchpot in his favor as to other real estate devised by the will. And see 3 Yerger, 45.

The whole doctrine of collation, is founded principally on the equality which the law requires in the distribution of estates among heirs. (4 Kent. Com. 419, note c.) We contend that Carmichael was an intestate, within the meaning of the term as used in the statute of descents, (1 R. S. 750 to 755,) although he left a will and appointed executors; because he died without devising his real estate. The word intestate, throughout this chapter, has reference to the words of the 1st section. " The real estate of every person who shall die without devising the same," that is without devising his real estate. A will of personal property with executors appointed, would not prevent his being an intestate under this chapter. Neither would an invalid will of real estate which was not a devise. A father advanced some of his children with portions in his lifetime, and then made his will, thereby reciting that he had advanced B. & C. but omitted D., whom he had also advanced, and left to him a sum certain, bequeathing the residue among all. Held that the money which D. had received, should go in satisfaction of the legacy left to him. ( *Upton* v. *Prince*, Ca. temp. Talbot, 76.) Another case of a will and executors, and yet advancement, was decreed, although not appearing in the will. (*Redington* v. *Redington*, E. 1794, 3 Ridgw. P. C. 106.) The whole case is stated at length in 2 Bridgman's Digested Index, 613, pl. 40.

The counsel also referred to 4 Dessauss. 292; Toller on Executors, 380; 3 P. Will. 317, note o; 1 Ves. 16.

THE ASSISTANT VICE-CHANCELLOR.—The first question arises upon the advancement to the complainants by the testator. And independent of the point, whether the bond was intended as a gift, or as a portion to Mrs. Thompson; it is claimed that the statute relative to advancements, is not applicable to this case.

The result of the former decree is, that Daniel Carmichael died without making any valid disposition of his real estate, or of the mass of his personal property. He left a will, which is valid so far as it bequeaths a small specific legacy to each of his two sons, and gives to his wife similar legacies, together with a sum sufficient for her support, charged upon his whole property.

The statute law exclusively, regulates the subject of advancement. This case does not fall within the provisions contained in the article of the revised statutes, relative to making distribution to the next of kin, because there is real estate which descended to Carmichael's heirs. (2 R. S. 97, 98, § 76 to 78.)

In the chapter "Of Title to Real Property by Descent," (1 R. S. 754, § 23 to 26,) it is provided, that if any child of an intestate shall have been advanced by him, &c., the portion shall be estimated in the division and distribution of the real and personal estate of the intestate.

It is contended on the one side, that these provisions apply where there is an intestacy *pro tanto ;* and on the other side, that they are not applicable at all where there is a will.

In the first place it is to be observed, that the words used in the revised statutes, are the same as those in the parallel statute published in the revised laws of 1813; and that statute had been continued without change in this respect, from its first enactment in this state on the 20th of February, 1787. (1 Greenleaf's Laws, 363, § 3; 1 Rev. Laws, 313, § 16.) Our first act was taken from the statute 22 and 23 Car. 2, ch. 10, made perpetual by the act 1 Jac. 2, ch. 17, and its language on this subject, is the same.

We may therefore look for our guidance to the construction put upon the act of the 22 and 23 Charles.

It appears to have been settled in England, soon after the passage of the law, that the child who had been advanced, was not required to bring his advancement into hotch-pot, except in the case of a total intestacy. *Vachell* v. *Jeffereys,* (Prec. in Ch.

169,) and *Cowper* v. *Scott*, (3 P. Will. 124,) appear to be direct authorities on the point; and they are confirmed by Sir William Grant's opinion in *Walton* v. *Walton*, (14 Ves. 324.) This is also laid down as good law in 3 Bac. Abr., Exec. and Admin. K. (And see *Hawley* v. *James*, 5 Paige, 450, 451—per Chancellor; and *Wheeler* v. *Shear*, Mosely's R. 301, 304.)

The same thing was decided under the statute of distributions in South Carolina, in a series of cases extending from 1802 till 1833. *Sinkler* v. *Legatees of Sinkler*, (2 De Sauss. Eq. R. 139,) which was a case of partial intestacy as to personal estate; *Snelgrove* v. *Snelgrove*, (4 ibid. 274, 291,) where there was a total intestacy as to the real estate, through a defect in the execution of the will, one of the witnesses being a devisee, but the will was valid as to the personalty; *Newman* v. *Wilbourne*, (1 Hill's Chy. R. 10;) and *McDougald* v. *King*, (1 Bailey's Eq. R. 154.)

I was referred to two decisions in Tennessee as being adverse to these. In one, devisees under a will were required to bring their devises into hotch-pot, in order to obtain a provision for a posthumous child, who was otherwise unprovided for.

In the other case, on a division of after acquired lands which did not pass by the will, the children of a second marriage, who by the will took all the lands the testator had at its date, were compelled to bring those lands into hotch-pot, in order to share in the former.

Under our statute I do not think that a provision by will, can be deemed an advancement.

On the statute itself, (1 R. S. 754,) a total intestacy appears to be contemplated. It is true, that in some of the previous sections of the same chapter, the word *intestate* is used as correlative to the words in the first section, *person who shall die without devising real estate*. But this is evidently to be restricted to its connection with the subject matter, that is to lands undevised. A person who had made a will, and disposed of all his personal property, would nevertheless be an *intestate* under those previous sections, as to the portion of his lands undevised, however insignificant. The twenty-third section commences a new subject. It is not "*the* intestate," or "*such* intestate;" referring to what goes before; but the words are, "*an* intestate," and the

provisions relate to personal estate which has not before been mentioned in the chapter, as well as to real estate. It is used as a general term, without qualification ; and as such, its meaning is well known and clearly defined. Both in its legal and popular sense, it means a person who dies without making a will.

The same language " an intestate," without addition or qualification, is used in the revised statutes, in the article relative to granting letters of administration. In short, a man who dies leaving a will, is not *an intestate.*

This case must be decided upon general principles, and not upon its peculiar features. It may be very plain to me, that this testator if he were now to make his will anew, would compel his eldest daughter to account for the bond of $1000, towards her distributive share, or exclude her entirely. But the same construction, which in this case would probably approximate towards his intention ; in another case might utterly frustrate the intention of the testator. Where one has advanced a part of his children, and then by will devises property to the residue, leaving other property undisposed of; it is a legal and reasonable presumption, that he intended the latter to go to both classes of his children equally, if any of it remained at his death. As to one class he has been his own executor. As to the other, he has by his will placed them upon an equal footing with the first class.

Now, if the defendant's construction of the statute is to prevail, the clear intent in the case put, will be utterly destroyed. The second class of children cannot be required to bring their legacies and devised estates into hotch-pot, for those are in no sense an advancement. And they can compel the first class to bring in and divide all the property they received from their father in his life time, or else exclude them from the whole estate which was not disposed of by the will.

The same consequence will ensue as to after acquired lands, where the will does not dispose of them ; and this is a case of frequent occurrence. So of any undisposed surplus. Again, take this case. There is a specific legacy to two of the children. They are trifling, it is true, but if they had been a valuable library and a service of plate, the principle would be the same. How can the courts arrive at the equality which is the foundation of

the statute as to advancements, where the testator has given to one and withheld from the others ? They cannot bring legacies into the fund for an equal distribution; and in every case of partial intestacy, the courts would be quite as likely to overthrow the intent of the testator by interfering in the mode which is sought here, as they would to carry it into effect.

The safer course it appears to me, is to follow the plain terms of the statute, and the English decisions; making no constructive intestacies, but leaving it to the legislature by more full enactments, to remedy the injustice, if any be found to exist.

In regard to the annual allowance made to the widow for her reasonable support ; I am satisfied with the decision of the master. What is *reasonable* for her, is not to be determined by the amount necessary for her bare subsistence. Reference is to be had also to the extent and income of the estate. And I think it is proper that she should be enabled to live with and take care of her small children.

Under all the circumstances, I think the allowance is *reasonable. (a)*

The objections to the master's report are therefore overruled. And in all other respects the decree will conform to the complainant's points.

---

(a) See *Tolley* v. *Greene*, 2 Sand. Ch. R. 91.